## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

```
MARTIN BRAMSON,              :     Civ. Action No. 04-5196(NLH)
                            :
        Plaintiff,          :
                            :
     v.                     :     OPINION
                            :
S.M. SULAYMAN, et al.,      :
                            :
        Defendants.         :
```

**APPEARANCES:**

Martin Bramson
5630 N. Sheridan Road Apt 228
Chicago, IL 60660

    *Pro Se*

Daniel J. Gibbons, Esquire
Office of the United States Attorney
970 Broad Street
Suite 700
Newark, NJ 07102

    *Attorney for Defendants*

**HILLMAN**, District Judge

This matter has come before the Court on Defendants' motion for summary judgment on Plaintiff's medical malpractice claims and claims that Defendants violated his Eighth Amendment right to adequate medical care.  For the reasons expressed below, Defendants' motion will be granted.

### BACKGROUND

In his Complaint, Plaintiff, Martin Bramson, claims that while he was incarcerated at FCI Fort Dix, various doctors and staff violated his constitutional rights and committed medical

malpractice.  Plaintiff claims that Dr. Sulayman, a physician at FCI Fort Dix, did not treat him properly for his chronic bronchitis and lung problems that he experienced since 1969. Plaintiff argues that Dr. Sulayman's failure to prescribe him inhalers contributed to his cardiomyopathy, and that Dr. Sulayman failed to diagnose his on-going and worsening congestive heart failure, where it progressed "to the point of risk of death" and immediate hospitalization was required.  Plaintiff also claims that another doctor, Dr. Chung, did not recognize his symptoms.

Plaintiff further contends that Dr. Loranth, the clinical director, implicated a BOP policy that "actively discouraged and limited the use of outside medical consultants and tests which prevent Plaintiff from receiving prompt access to a lung specialist until his medical condition turned critical." Plaintiff complains that the other Defendants, S.P.A. Patel, a physician's assistant, M. Mangalindan, a mid-level practitioner, and E. Magallon, another mid-level practitioner, also misdiagnosed or mistreated him.

As a result of these doctors' mistreatment, Plaintiff claims that he was hospitalized and suffered permanent damage to his heart and lungs.  He is now required to use a pacemaker and defibrillator, and his life expectancy has been reduced. Plaintiff also claims that he cannot participate in the same activities as he did in the past.

Defendants have filed a motion for summary judgment on

Plaintiff's claims.  Defendants argue that they did not violate Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment because Plaintiff was provided with adequate medical care, and that they are otherwise entitled to qualified immunity.  Defendants also argue that they are entitled to judgment in their favor on Plaintiff's medical malpractice claim because Plaintiff failed to timely file a proper affidavit of merit as required by New Jersey law.

**DISCUSSION**

**A.   Plaintiff's Eighth Amendment Claim**

Plaintiff has brought his constitutional violation claim against Defendants pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), which provides that a right of action against federal officials exists parallel to the right of action against state actors under 42 U.S.C. § 1983.  See Couden v. Duffy, 446 F.3d 483, 491 (3d Cir. 2006); see also Carlson v. Green, 446 U.S. 14, 20 (1980) (holding that Bivens provides a remedy for violations of the Eighth Amendment for the deliberate indifference to a serious medical need).[1]

---

[1]As a primary matter, in order to bring a Bivens action against federal officials, a prisoner must exhaust all available remedies before filing suit.  Ahmed v. Dragovich, 297 F.3d 201, 209 n.9 (3d Cir. 2002); Oriakhi v. United States, 165 Fed. Appx. 991, 993 (3d Cir. Feb. 10, 2006) (explaining that "the Prison Litigation Reform Act prohibits an inmate from bringing a civil rights suit alleging specific acts of unconstitutional conduct by

The Eighth Amendment proscription against cruel and unusual punishment requires that inmates are provided with adequate medical care.  To establish a violation of his Eighth Amendment right to adequate medical care, Plaintiff must show (1) a serious medical need, and (2) acts or omissions by prison officials that indicated deliberate indifference to that need.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 103-04 (1976); <u>Natale v. Camden County Corr. Facility</u>, 318 F.3d 575, 582 (3d Cir. 2003).

**(1)  Serious medical need**

To prove his claim, Plaintiff must first show that he had a serious medical need.  "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"  <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992).  A serious medical need is a

---

prison officials 'until such administrative remedies as are available are exhausted,' 42 U.S.C. § 1997e(a)," and to "satisfy this requirement, a prisoner must exhaust all available administrative remedies prior to filing suit, including a <u>Bivens</u> action.").  Here, although it appears that Plaintiff complied with the administrative procedures of the Federal Tort Claims Act for his medical malpractice claim, it does not appear from the record that Plaintiff exhausted his administrative remedies with regard to his constitutional claim.  Defendant does not raise this issue, however, and because it is not apparent from the face of Plaintiff's Complaint or the other documents before the Court that Plaintiff failed to exhaust his administrative remedies, the Court cannot *sua sponte* dismiss Plaintiff's claim on this basis. <u>See</u> <u>Ray v. Kertes</u>, 285 F.3d 287, 296 (3d Cir. 2002).

need diagnosed by a physician that the physician believes to require medical treatment, or a need that is "so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) (citation omitted); see also Atkinson v. Taylor, 316 F.3d 257, 273 (3d Cir. 2003). Additionally, the medical need is considered serious where denial or delay causes an inmate to suffer a life-long handicap or permanent loss. Monmouth County, 834 F.2d at 347.

Here, Defendants do not contest that Plaintiff required treatment for a serious medical need.

**(2)  Deliberate indifference**

Plaintiff must also show that Defendants' behavior constituted deliberate indifference to his serious medical need. "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. Farmer v. Brennan, 511 U.S. 825, 837-38 (1994). Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. Andrews v. Camden County, 95 F. Supp. 2d 217, 228 (D.N.J. 2000). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a

particular course of treatment . . . [which] remains a question of sound professional judgment." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110.

The Third Circuit has found deliberate indifference where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment for non-medical reasons; or (3) prevents a prisoner from receiving needed or recommended treatment. See Rouse, 182 F.3d at 197. The court has also held that needless suffering resulting from the denial of simple medical care, which does not serve any penological purpose, violates the Eighth Amendment. Atkinson, 316 F.3d at 266; see also Monmouth County, 834 F.2d at 346 ("[D]eliberate indifference is demonstrated '[w]hen . . . prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment.'"); Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993); White v. Napoleon, 897 F.2d 103 (3d Cir. 1990).

In his Complaint, Plaintiff claims that Defendant Dr.

6

Sulayman 1) breached his duty of care by not referring Plaintiff to a thoracic surgeon or other lung specialist for his lung infections until December 7, 2001; 2) failed to prescribe any oral inhalers which contributed to his cardiomyophathy; and 3) did not recognize Plaintiff's on-going and worsening congestive heart failure until January 27, 2002, when he was finally seen by a lung specialist and immediately transferred to the hospital. Plaintiff also claims that Defendant Dr. Chung did not recognize that Plaintiff's ongoing lung problems were indicative of congestive heart failure.

With regard to Defendant Dr. Loranth, Plaintiff claims that when he told Dr. Loranth in early January 2002 that he had been waiting for almost a month for the consultation with the lung specialist ordered by Dr. Sulayman, Dr. Loranth told Plaintiff that he had to be patient and it would occur in the near future. Plaintiff also claims that Dr. Loranth implemented a policy "based on Federal Bureau of Prisons Policy and Guidelines and other Directives issued from the Regional and Central Offices that actively discouraged and limited the use of outside medical consultants and tests which prevented Plaintiff from receiving prompt access to a lung specialist until his medical condition turned critical." (Compl. ¶ 21.B.)

Plaintiff claims that he also complained to Defendant Patel regarding the length of waiting time for his consultation with a

7

lung specialist, and Patel told Plaintiff "'that all was being done as fast as it could be done and that if [Plaintiff] continued to make a lot of noise about his lack of treatment, he [Mr. Patel] would have him [Plaintiff] thrown in the SHU (the "Hole")' or words very much like that and importing the same meaning." (Compl. ¶ 22.B.) Plaintiff also alleges that Patel should have known of the seriousness of his condition.

Plaintiff's claims against Defendants Mangalindan and Magallon are essentially the same: they "did not recognize the obvious symptoms of congestive heart failure" and they did not "seek to further examine him to any available physician for a second opinion as to the cause of those symptoms." (Compl. ¶ 23, 24.) Based on all these claims against the Defendants, Plaintiff contends that he has suffered permanent damage to his heart, which has reduced his life expectancy, as well as severely limiting the range of activities he can participate in.

In order to prove his constitutional claim, Plaintiff has the burden of proving that Defendants were deliberately indifferent to his condition. To meet that burden, Plaintiff must show that Defendants had a state of mind equivalent to reckless disregard of a known risk of harm, rather than just mere negligence. Specifically, Plaintiff must show that Defendants knew of Plaintiff's need for medical treatment but intentionally refused to provide it, or that Defendants delayed the necessary

8

medical treatment for non-medical reasons, or that Defendants
prevented him from receiving needed or recommended treatment.

In their motion, Defendants argue that they are entitled to
qualified immunity on Plaintiff's constitutional claims.  In his
opposition to Defendants' motion, Plaintiff repeatedly states
that "during discovery and at trial Plaintiff will call witnesses
who will testify" to all of Plaintiff's allegations, and asks the
Court to allow discovery to proceed.

From a review of the procedural history of the case, it
appears that no discovery has been conducted.  On October 19,
2005, in response to Magistrate Judge Ann Marie Donio's letter
setting forth the schedule for pre-trial discovery, Plaintiff
requested a stay of his case until March 1, 2006 due to his
release from prison and transfer to a halfway house.  When the
case was reopened in April 2006, Defendants requested a stay of
discovery pending the resolution of a motion to dismiss
Plaintiff's claims based on their qualified immunity.  In an
Order filed on June 9, 2006, Judge Donio found that a stay of
discovery would be appropriate in the event that Defendants filed
a motion asserting immunity from suit, but because Defendants had
not yet filed such a motion, Judge Donio denied their request
without prejudice to their right to renew the motion to stay if a
dispositive motion was filed.  Defendants filed the instant
motion for summary judgment on July 14, 2006, but never renewed

9

their motion to stay discovery.  To date, no discovery has been
conducted.

Qualified immunity should be resolved at the earliest stage
of litigation.  Saucier v. Katz, 533 U.S. 194, 200-01 (2001)
(stating that because qualified immunity is "'an immunity from
suit rather than a mere defense to liability,'" "'we repeatedly
have stressed the importance of resolving immunity questions at
the earliest possible stage in litigation.'").  The Third Circuit
has explained the inquiry for deciding pre-discovery motions to
dismiss based on qualified immunity:

> When the defendant . . . claims qualified
> immunity, a court must first determine if the
> plaintiff's allegations are sufficient to establish the
> violation of a federal constitutional or statutory
> right.  Wilson v. Layne, 526 U.S. 603, 609(1999),
> citing Conn v. Gabbert, 526 U.S. 286, 290 (1999).  If
> the plaintiff's allegations meet this threshold, a
> court must next determine whether the right that the
> defendant's conduct allegedly violated was a clearly
> established one, about which a reasonable person would
> have known.  Id.  If the plaintiff's allegations fail
> to satisfy either inquiry, then a defendant is entitled
> to qualified immunity and dismissal of the case.
> Deciding "this purely legal question permits courts
> expeditiously to weed out suits which fail the test
> without requiring a defendant who rightly claims
> qualified immunity to engage in expensive and time
> consuming preparation to defend the suit on its
> merits."  Siegert v. Gilley, 500 U.S. 226, 232 (1991).

Doe v. Delie, 257 F.3d 309, 314-15 (3d Cir. 2001).

Here, in their motion to stay discovery, Defendants properly
requested that prior to the undertaking of any discovery the

10

Court review Plaintiff's Complaint to determine whether they are
entitled to qualified immunity.  In support of their motion to
prove that they are entitled to qualified immunity, instead of
limiting their arguments to the face of Plaintiff's Complaint,
however, Defendants have submitted excerpts from the nearly 1000
pages of medical records for Plaintiff's treatment at FCI Fort
Dix.  The Court is constrained from considering these medical
records because it would be incongruous to the purpose of pre-
discovery immunity determinations, as well as patently unfair to
the Plaintiff, who is precluded from conducting his own discovery
due to the Defendants' assertion of immunity.  Thus, at this
stage in the litigation, the Court may only look at the face of
Plaintiff's Complaint to determine whether Defendants are
entitled to qualified immunity

The first question the Court must consider is: Taken in the
light most favorable to Plaintiff, do the facts alleged show that
the Defendants' conduct amounted to deliberate indifference of
Plaintiff's serious medical need?  As was stated above, Plaintiff
must show that Defendants knew of Plaintiff's need for medical
treatment but intentionally refused to provide it, or that
Defendants delayed the necessary medical treatment for non-
medical reasons, or that Defendants prevented him from receiving
needed or recommended treatment.  With regard to Defendants Dr.
Sulayman, Dr. Chung, Patel, Mangalindan, and Magallon, Plaintiff

11

claims that they "did not recognize" or "should have known" the seriousness of Plaintiff's condition.  These allegations constitute malpractice or negligence; nothing in Plaintiff's claims against these Defendants rises to the level of reckless disregard of a known risk of harm, which is required for a deliberate indifference claim.  Thus, for these Defendants, the inquiry ends here, because if "no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201.  Accordingly, summary judgment in favor of these Defendants on Plaintiff's constitutional claims must be granted.

With regard to Dr. Loranth, Plaintiff claims that he implemented a policy "based on Federal Bureau of Prisons Policy and Guidelines and other Directives issued from the Regional and Central Offices that actively discouraged and limited the use of outside medical consultants and tests which prevented Plaintiff from receiving prompt access to a lung specialist until his medical condition turned critical."  This allegation may be construed as a claim that Dr. Loranth delayed Plaintiff's necessary medical treatment for non-medical reasons.  Thus, the second step in the qualified immunity analysis must be conducted for this Defendant.

The second question the Court must consider is: Was the

right that Dr. Loranth's conduct allegedly violated a clearly
established one, about which a reasonable person would have
known?  Plaintiff claims that Dr. Loranth implemented a policy
based on BOP guidelines and directives that discouraged and
limited the use of outside consultants and tests.  Construing
Plaintiff's claim liberally, it appears that Plaintiff is
contending that the delay in receiving a consultation with a lung
specialist was due to a BOP policy disfavoring such
consultations, presumably because of the cost of private
consultations, and Dr. Loranth, as clinical director, enforced
that BOP policy, which violated his Eighth Amendment right to
adequate medical care.

   The deliberate indifference standard "does not guarantee
prisoners the right to be entirely free from the cost
considerations that figure in the medical-care decisions made by
most non-prisoners in our society."  Reynolds v. Wagner, 128 F.3d
166, 175 (3d Cir. 1997).   The Supreme Court explained:

> [W]hen a prison regulation impinges on inmates'
> constitutional rights, the regulation is valid if it is
> reasonably related to legitimate penological interests.
> In our view, such a standard is necessary if prison
> administrators, and not the courts, are to make the
> difficult judgments concerning institutional
> operations.

Turner v. Safley, 482 U.S. 78, 89 (1987); see also Brightwell v.
Lehman, 2006 WL 931702, *8 (W.D. Pa. April 10, 2006) ("That cost

13

is a factor in the provision of treatment outside the prison walls supports this conclusion [that disagreement over which drugs to administer simply does not demonstrate the deliberate indifference necessary to state an Eighth Amendment claim]. Resources are not infinite and reasonable allocation of those resources, taking into account cost, does not amount to deliberate indifference even if a prisoner does not receive the most costly treatments or his treatment of choice.").

Here, Plaintiff claims that Dr. Loranth was implementing a BOP policy that limited access to specialists because of cost considerations.  If Plaintiff wishes to challenge the constitutionality of that policy, he may do so, but the BOP (or the appropriate governmental actor) is not a defendant in this case, and whether this policy is constitutional is not presently before the court.  Thus, returning to the question of whether Dr. Loranth's conduct violated a clearly established right about which a reasonable person would have known, taking Plaintiff's allegations as true, Dr. Loranth was implementing an existing policy that he, or any other reasonable person, would have no reason to believe is unconstitutional.  Consequently, Dr. Loranth is entitled to qualified immunity on Plaintiff's claims, and summary judgment must be granted in his favor.

**B. Plaintiff's Medical Malpractice Claims**

Defendants have also moved to dismiss Plaintiff's medical

malpractice claims for his failure to timely file an affidavit of

merit as required by New Jersey statute.[2]  New Jersey's Affidavit

of Merit statute provides,

> In any action for damages for personal injuries,
> wrongful death or property damage resulting from an
> alleged act of malpractice or negligence by a licensed
> person in his profession or occupation, the plaintiff
> shall, within 60 days following the date of filing of
> the answer to the complaint by the defendant, provide
> each defendant with an affidavit of an appropriate
> licensed person that there exists a reasonable
> probability that the care, skill or knowledge exercised
> or exhibited in the treatment, practice or work that is
> the subject of the complaint, fell outside acceptable
> professional or occupational standards or treatment
> practices. The court may grant no more than one
> additional period, not to exceed 60 days, to file the
> affidavit pursuant to this section, upon a finding of
> good cause.

N.J. Stat. Ann. 2A:53A-27.[3]

The Affidavit of Merit statute has a dual purpose: "to weed

out frivolous lawsuits early in the litigation while, at the same

time, ensuring that plaintiffs with meritorious claims will have

their day in court."  Ferreira v. Rancocas Orthopedic Associates,

---

[2]For Defendants' alleged conduct, Plaintiff is permitted to bring both a Bivens action and a common law tort claim.  See Carlson v. Green, 446 U.S. 14, 20(1980) (providing a plaintiff may have an action under the Federal Tort Claims Act against the United States as well as a Bivens action against the individual officials alleged to have infringed plaintiff's constitutional rights).  Defendants do not appear to dispute that Plaintiff complied with the claim procedures of the FTCA.

[3]The application of the New Jersey Affidavit of Merit Statute is enforceable in federal court when New Jersey law applies.  Chamberlain v. Giampapa, 210 F.3d 154, 156 (3d Cir. 2000).

15

836 A.2d 779, 782-83 (N.J. 2003) (citations and quotations omitted).  A plaintiff must file an affidavit of merit within 120 days of the filing of the defendant's answer or "face dismissal of the complaint with prejudice, absent some equitable justification."  Knorr v. Smeal, 836 A.2d 794, 798 (N.J. 2003).

Here, Defendants filed their Answer on October 14, 2005. Plaintiff was required to provide each Defendant with an affidavit of merit by January 10, 2006, but failed to do so. However, after Defendants filed their motion to dismiss Plaintiff's medical malpractice claims for his failure to provide an affidavit of merit, Plaintiff attached to his opposition papers what he deems to be his affidavit of merit.  Plaintiff claims that this "Certificate of Merit" was sent to the Court in a letter dated September 16, 2005, which he entitled "Letter Motion for Default Judgment" since he was also requesting the entry of default judgment against Defendants.  Plaintiff claims that he does not know why his letter was not entered onto the Docket, other than to explain that the mail system at the medical facility in Lexington, Kentucky where he was incarcerated at the time was notorious for mishandling and losing prisoner mail.

When a plaintiff has not provided an affidavit of merit to each defendant by the 120-day deadline, "the plaintiff should expect that the complaint will be dismissed with prejudice provided the doctrines of substantial compliance and

extraordinary circumstances do not apply." Ferreira, 836 A.2d at 785.  Thus, because Plaintiff did not timely file his affidavit of merit, it must be determined whether the doctrines of substantial compliance and extraordinary circumstances can save his claim.

The doctrine of substantial compliance contains five elements, all of which must be met:  (1) the lack of prejudice to the defending party; (2) a series of steps taken to comply with the statute involved; (3) a general compliance with the purpose of the statute; (4) a reasonable notice of petitioner's claim, and (5) a reasonable explanation why there was not a strict compliance with the statute.  Galik v. Clara Maass Medical Center, 771 A.2d 1141, 1149 (N.J. 2001).  "In each case, the court is required to assess the facts against the clearly defined elements to determine whether technical non-conformity is excusable," but "[t]o be sure, not every non-complying act is salvageable under the substantial compliance doctrine."  Id.  The purpose of the substantial compliance doctrine is "to avoid technical defeats of valid claims."  Palanque v. Lambert-Wooley, 774 A.2d 501, 505 (N.J. 2001) (citation and quotations omitted).

Additionally, not filing an affidavit of merit within the prescribed 120-day deadline may not permanently bar a plaintiff's claim if there are "extraordinary circumstances."  A complaint will be dismissed without prejudice when "extraordinary

circumstances" exist to explain non-compliance.  <u>Ferreira</u>, 836
A.2d at 783.  What constitutes "extraordinary circumstances" is a
fact-sensitive analysis, <u>Chamberlain v. Giampapa</u>, 210 F.3d 154,
162 (3d Cir. 2000) (citation omitted), but extraordinary
circumstances are not "carelessness, lack of circumspection, lack
of diligence, or ignorance of the law," <u>Balthazar v. Atlantic
City Med. Ctr.</u>, 816 A.2d 1059, 1067 (N.J. Super. Ct. App. Div.
2003), <u>cert. denied</u>, 827 A.2d 288 (2003).

 There are numerous problems with Plaintiff's "affidavit"
which cannot be saved by the substantial compliance or
extraordinary circumstances doctrines.  First, Plaintiff's late
filing of his affidavit does not substantially comply with the
procedures of the statute.  Even if the letter to the Court
containing the affidavit was not mishandled by the Lexington
medical facility, Plaintiff was required to provide each
Defendant with the affidavit following the filing of his or her
answer, rather than sending it to the Court attached to a motion
for default judgment.  The Affidavit of Merit statute "requires
that a plaintiff 'shall provide each defendant with [the]
affidavit,' not merely obtain same."  <u>Kubiak v. Robert Wood
Johnson University Hosp.</u>, 753 A.2d 166, 169-70 (N.J. Super. Ct.
App. Div. 2000).  Indeed, perhaps if Plaintiff had sent his
affidavit to each of the six Defendants as required by the
statute, one would have been handled properly by the medical

18

facility's mail staff and arrived at its proper destination.
Furthermore, because the purpose of the Affidavit of Merit
statute is to weed out meritless malpractice lawsuits, the
"affidavit of merit may have proved useful to defendant[s] early
in the case when [they] needed to know whether there was any
validity to the complaint."  Knorr, 836 A.2d at 801.  That
purpose has not been fulfilled here.

Second, Plaintiff's explanation for why the affidavit is
late is not extraordinary.  Again, taking as true Plaintiff's
contention that the letter containing his affidavit was
mishandled, and setting aside the requirement that Plaintiff
provide the affidavit to each of the Defendants, Plaintiff was
aware of the statute, but he did not ensure that his affidavit
was received by the Court.[4]  "Plaintiff's status as a *pro se*
litigant does not excuse his failure to file an affidavit of
merit."  Bivens v. Correctional Medical Services, Inc., 2006 WL

---

[4]Defendants did not have an obligation in this case to
inform Plaintiff that he was required to provide an affidavit of
merit within 120 days of their answer.  See Marcantonio v.
Hundertmark, 2005 WL 3663634, *4 (N.J. Super. App. Div. 2006)
(citing cases) ("[W]e do not understand the law as requiring
defendants in this case to notify plaintiff of his obligation
under the statute. Defendants cannot be penalized for waiting
until the 120-day period had passed before filing their
respective motions to dismiss."); but cf. Knorr v. Smeal, 836
A.2d 794, 796, 801 (N.J. 2003) (explaining that it may be
inequitable in some circumstances for a defendant to file a
motion to dismiss after the receipt of an untimely affidavit of
merit, or when plaintiff and defendant have engaged in extensive
discovery establishing the merit of plaintiff's claim).

2689821, *3 (D.N.J. Sept. 14, 2006) (citing Lee v. Thompson, 163
F. App'x 142, 144 (3d Cir. 2006)).  Even though the Court has an
"obligation to liberally construe a pro se litigant's pleadings,
'ignorance of the law or failure to seek legal advice will not
excuse failure to meet the filing deadline.'"  Lee, 163 F. App'x
at 144 (quoting Hyman Zamft and Manard v. Cornell, 707 A.2d 1068,
1071 (N.J. Super. Ct. App. Div. 1998)).  Additionally, Plaintiff
cannot claim that Defendants hampered his ability to timely file
the affidavit because 1) Plaintiff had a copy of all his medical
records, which his "appropriate licensed person" reviewed to
prepare the affidavit, 2) Plaintiff's affidavit is dated August
20, 2004, prior to Plaintiff even filing his Complaint, and 3)
Plaintiff's letter to the Court containing the affidavit was
mailed on September 16, 2005, prior to Defendants' counsel's
entry of appearance and Answer.  Thus, no extraordinary
circumstances exist to excuse Plaintiff's untimely affidavit of
merit.[5]

---

[5]When extraordinary circumstances exist, the remedy is
dismissal of a plaintiff's complaint without prejudice to allow a
plaintiff to refile his Complaint and then properly comply with
the statute.  See Ferreira, 836 A.2d at 783.  This remedy, if
extraordinary circumstance did exist, would not save Plaintiff's
claim here, however, because the two-year statute of limitations
for Plaintiff's malpractice claims would have already run.
Incidently, the Court notes that it appears that the statute of
limitations may have already run prior to Plaintiff filing his
Complaint.  The applicable limitation period for a plaintiff's
claim for medical malpractice is "2 years next after the cause of
any such action shall have accrued."  Rohrich v. Benotti, 2005 WL
3357721, *2 (N.J. Super. Ct. App. Div. 2006) (citing N.J. Stat.

Even if Plaintiff properly provided each Defendant with his purported affidavit of merit in a timely manner, the substance of Plaintiff's affidavit is deficient.  First, Plaintiff's affidavit does not specify which Defendant caused what harm.  Instead, it generalizes that "malpractice was committed upon Martin Bramson, which included the failure to recognize his symptoms of on-going congestive heart failure in view of his history of heart problems, and to immediately treat him for that life-threatening medical condition."  The Affidavit of Merit statute "requires that a plaintiff provide an affidavit to each defendant detailing a reasonable probability that at least one claim concerning each defendant has merit.  If a plaintiff were permitted to name fifteen defendants and provide each with an affidavit specifying only that a claim against one defendant is meritorious, the statutory purpose of reducing frivolous lawsuits would be subverted or circumvented."  Fink, 772 A.2d at 392.  Here,

---

Ann. 2A:14-2a).  "A cause of action accrues when a plaintiff both knows he or she has suffered an injury and knows the injury was caused by the fault of another."  Id.  According to Plaintiff's Complaint, it appears that Plaintiff both knew he was injured and knew the injury was caused by the fault of another by January 27, 2002.  Plaintiff filed his Complaint on October 22, 2004, apparently ten months after the expiration of the time in which to bring his medical malpractice claims.  Because Defendants did not raise the statute of limitations in their motion, however, the Court makes no determination as a matter of law on this issue.

Plaintiff's affidavit does not even specify a claim against one of the Defendants.  With six Defendants each having an alleged separate role in Plaintiff's treatment, Plaintiff's affidavit fails to appropriately specify which Defendant's conduct "fell outside acceptable professional or occupational standards or treatment practices," as required by the statute.[6]

Correspondingly, Plaintiff's affidavit does not even contain the key language required by the statute: "that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices." Instead, the affidavit states, "It is my professional opinion medical malpractice was committed upon Martin Bramson," and "In my professional opinion the extended lack of treatment for his heart condition resulted in cardiomyopathy, enlarged heart, and a

_____

[6]There have been instances where an affidavit of merit was not deemed insufficient because it did not specifically name the defendant by name, but in contrast to the case here, those instances involved only one defendant or where the affidavit otherwise sufficiently identified the defendant.  See, e.g., Medeiros v. O'Donnell & Naccarato, Inc., 790 A.2d 969, 972-73 (N.J. Super. App. Div. 2002) ("In this case, an affidavit of merit has been prepared that identifies a deviation from professional standards by 'defendant architects and engineers, respectively.' There is no dispute that O'Donnell & Naccarato are engineers who performed work on the project where plaintiff was injured.  To require that the name of O'Donnell & Naccarato be mentioned in the actual affidavit is more than is needed to effectuate the intent of the Legislature, given the circumstances here.").

diminished ejection fraction of only 20% that necessitated the implantation of a pacemaker/defibrillator, which could possibly have been avoided, with early and vigorous treatment of his primary symptoms of heart failure."

Even though the affidavit of merit needs only to be "summary in nature," the statute requires "that the expert whose affidavit is filed certify that a reasonable probability exists that the defendant in question deviated from professional standards." Medeiros v. O'Donnell & Naccarato, Inc., 790 A.2d 969, 973 (N.J. Super. Ct. App. Div. 2002) (citing Pet. of Hall By and Through Hall, 688 A.2d 81, 88 (N.J. 1997)). This is the only language that the statute explicitly requires to be in the affidavit. See Kindig v. Gooberman, 149 F. Supp. 2d 159, 167 (D.N.J. 2001) (citing Cornblatt v. Barow, 708 A.2d 401, 412 (N.J. 1998) (explaining that "this language is the only part of the statute detailing what must be specifically included" in the affidavit of merit). By omitting this language and only stating "in my professional opinion," Plaintiff's expert does not fulfill the purpose of the affidavit of merit to screen out meritless claims. That is because in order to establish a *prima facie* case of negligence in a medical-malpractice action, a plaintiff must present expert testimony establishing (1) the applicable standard of care, (2) a deviation from that standard of care, and (3) that the deviation proximately caused the injury. Gardner v. Pawliw,

696 A.2d 599, 608 (N.J. 1997).  The statute's requirement that the affidavit contain language that mirrors the elements of a medical malpractice claim ensures that even at the earliest point in the case, a plaintiff has more than a shot in the dark of establishing a meritorious malpractice claim.  Consequently, because Plaintiff's affidavit is missing such key language, his affidavit does not comply, or even substantially comply, with the statute.

Finally, Defendants tangentially raise the issue of whether Plaintiff's "appropriate licensed person" qualifies under the statute.  The statute was amended on June 7, 2004 to provide specific qualifications an affiant must possess in a medical malpractice case, but this amendment does not apply to Plaintiff's claims.  See N.J. Stat. Ann. 2A:53A-27.  The version of the statute applicable to Plaintiff's claims provides, "[T]he person executing the affidavit shall be licensed in this or any other state; have particular expertise in the general area or specialty involved in the action, as evidenced by board certification or by devotion of the person's practice substantially to the general area or specialty involved in the action for a period of at least five years [and] . . . shall have no financial interest in the outcome of the case under review." Id.

It is questionable whether Plaintiff's "licensed person"

24

qualifies under the statute for two reasons.  First, Plaintiff's declarant is his brother "Carl Bramson, MD," and it is unclear whether he has a financial interest in the outcome of the case. Second, Dr. Bramson states that he is a "licensed physician Board Certified in Family Medicine and [has] been practicing medicine for more than twenty years," and his curriculum vitae is attached, but it is unclear whether he has devoted his practice "substantially to the general area or specialty involved in the action for a period of at least five years," especially considering that Defendants include three medical doctors, a physician's assistant, and two "mid-level practitioners." Because, however, it has already been determined that Plaintiff's purported affidavit of merit is procedurally and substantively deficient, the Court will not further analyze this issue.

### CONCLUSION

For the reasons expressed above, Defendants are entitled to summary judgment on Plaintiff's constitutional violation claims because Plaintiff has not sufficiently alleged that Defendants were deliberately indifferent to his serious medical need. Additionally, Plaintiff's medical malpractice claims must be dismissed with prejudice for his failure to comply with New Jersey's Affidavit of Merit statute.  An appropriate Order will be entered.

Dated: January 23, 2007          s/ Noel L. Hillman

At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.